THIRD DIVISION

No. 1-03-0814

RICHARD ROSEN,

Plaintiff-Appellee,

v.

SCIL, LLC.; SAKS INCORPORATED, and DOES 1-10, 

Defendants-Appellants.

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 02 CH 17427

Honorable

Thomas P. Quinn,

Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court: 

This interlocutory appeal arises as a result of disputed charges on plaintiff's Saks Fifth Avenue credit card.  The issue on appeal is whether an arbitration clause in an amended credit card agreement is enforceable. 

BACKGROUND

Plaintiff, Richard Rosen, filed a class action lawsuit against defendants, SCIL, LLC, Saks Incorporated and DOES 1-10, disputing two charges of "fictitious taxes" on his Saks Fifth Avenue credit card.  Defendants filed a motion to compel arbitration and to stay the proceedings pursuant to an amendment to plaintiff's credit card agreement permitting either party to compel arbitration.  The circuit court denied the motion and defendants now appeal.  We reverse and remand.

Plaintiff's complaint alleged that defendants unlawfully charged him sales tax on the purchase of services, 
i.e.
, alterations on clothing he purchased at defendants' store.  The sales tax plaintiff paid on the two transactions totaled $3.19.  Plaintiff's complaint further alleged that defendants' practice violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2000)).

Defendants' motion to compel arbitration and stay the proceedings included a copy of the amendment to the credit agreement that was sent to Saks Fifth Avenue cardholders.  
The cover page of the arbitration agreement contained the following in large, bold-faced type.

"
Important Notice Saks Fifth Avenue Credit Card Accounts  

Please Read This Notice Carefully
."

The following pages of the agreement contained the following relevant information. 

"
Summary of Important New Terms

1.  Arbitration of Disputes
.  We are adding a provision to the New Agreement at paragraph 18 in which both we and you agree to resolve all disputes involving your account balance attributable to purchases charged to your account 
on or after the Effective Date
) by arbitration rather than by litigation in court, if you 
OR
 we request arbitration on or for a particular dispute.  This means that if only one of us requests arbitration for a dispute involving your account, (1) the dispute will be arbitrated in accordance with paragraph 18 (even if the other does not want to arbitrate the dispute), (2) there will be 
no jury trial
 for the dispute, (3) generally, there will be no prearbitration discovery (i.e., the pre-trial fact-finding process) for the dispute, and (4) the dispute will not be arbitrated on a class-action basis, and neither you nor we will have the right to participate as a representative or member of any class of claimants pertaining to any dispute involving your account.  If neither you nor we requests arbitration, the dispute will not be resolved by arbitration and instead will be litigated in court.  However, absent unusual circumstances, we currently intend to request arbitration for all disputes that are claims by you against us, and when we request arbitration the disputes will be arbitrated in accordance with paragraph 18 even if you do not want the disputes to be arbitrated.  

Please carefully read paragraph 18 of the New Agreement.  If you do not wish to agree to this new arbitration provision, do not charge a purchase to your account on or after the Effective Date.  In that case, the arbitration provision will not apply to your account, and the current terms of your account will continue to apply until your account balance is paid in full.  However, 
if you charge a purchase to your account on or after the Effective Date, that purchase will be your agreement to the new arbitration provision
 in which you agree to resolve all disputes between you and us by arbitration in accordance with paragraph 18 of the New Agreement, 
but arbitration will not apply to disputes involving any part of your account balance attributable to purchases charged to your account before the Effective Date
."  (Bold in original.) 

"
18.  Arbitration for Disputes; No Jury Trials or Class Actions:

* * * 

If we or you request arbitration of a Claim, we and you will not have the right to litigate the Claim in court.  This means (1) there will be no jury trial on the Claim, (2) no prearbitration discovery except as the Rules permit, and (3) no claim may be arbitrated on a class-action basis, and neither we nor you will have the right to participate as a representative or member of any class of claimants pertaining to any Claim subject to arbitration.  Generally, the arbitrator's decision will be final and binding.  There are other rights that you would have if you went to court that also may not be available in arbitration.  

* * * 

If you make a request to us in writing, we will temporarily advance to you the filing, administrative, and hearing fees for the arbitration of your Claim against us * * * in excess of any filing fee you would have been required to pay to file the Claim in a state or federal court * * *.  At the end of the arbitration, the arbitrator will decide if you have to repay the advance (and if you do have to repay, you agree to do so).  

* * *     

This paragraph 18 will be governed by the Federal Arbitration Act ('
FAA
')."  (Bold in original.)   

The circuit court denied the motion to compel arbitration and to stay the proceedings, finding that the arbitration provision either violated public policy or that it was unconscionable.  The court stated, "I don't think that the litigant can effectively vindicate their cause of action in the arbitrable forum because the claims are so small, and I think the effect of compelling arbitration would be to, in essence, [neither] provide any remedy for the plaintiff [nor] provide any deterrence to the defendant."  

ANALYSIS

An order to compel arbitration is injunctive in nature and is appealable under Supreme Court Rule 307(a)(1).  
Salsitz v. Kreiss
, 198 Ill. 2d 1, 11 (2001); 188 Ill. 2d R. 307(a)(1). 
 Generally, the standard employed in reviewing an interlocutory order granting or denying a motion to compel arbitration is whether the circuit court abused its discretion.  
Bishop v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 1189 (2000).
  However, a review of a trial court's construction of the arbitration agreement, presents a question of law which is subject to a 
de novo
 standard.  
Caligiuri v. First Colony Life Insurance Co.
, 318 Ill. App. 3d 793, 800 (2000). 

Initially, we note, defendants maintain that the Federal Arbitration Act (FAA) (9 U.S.C. §1 
et seq
. (2000)) governs this case.  Plaintiff maintains, however, that the FAA does not apply and this court should follow the provisions of the Illinois Uniform Arbitration Act (Illinois Act)
 (710 ILCS 5/1 
et seq
. (West 2000)). 

The FAA provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2 (2000).  

Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  
Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785
,103 S. Ct. 927, 941 (1983).  The purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements * * * and to place arbitration agreements upon the same footing as other contracts."  
Gilmer v. Interstate/Johnson Lane Corp.
, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36
, 111 S. Ct. 1647, 1651 (1991).  It is clear the FAA applies in both state and federal courts.  
Southland Corp. v. Keating
, 465 U.S. 1, 14-15, 79 L. Ed. 2d 1, 14, 104 S. Ct. 852, 860 (1984).  

In the present case, the arbitration provision falls within the purview of the FAA because it was a contract "evidencing a transaction involving commerce."  The clause was contained in plaintiff's credit card agreement and the controversy arose as a result of plaintiff's use of the card.  We agree with defendants that the FAA controls the issue in this case.  See 
Moses H. Cone
, 460 U.S. at 24, 74 L. Ed. 2d at 785, 103 S. Ct. at 941
 (the purpose of the FAA "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act").  See also 
Caligiuri v. First Colony Life Insurance Co.
, 318 Ill. App. 3d 793, 799 (2001); 
Caudle v. Sears, Roebuck & Co.
, 245 Ill. App. 3d 959, 964 (1993).    

We also note that section 2 of the FAA is similar to section 1 of the
 Illinois Act.  Section 1 of the Illinois Act provides in part: "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract."  710 ILCS 5/1 (West 2000).  

Despite each party's argument that either the FAA or the Illinois Act applies, neither party argues, nor do we find, that the outcome of this case would be different whether we applied the FAA or the Illinois Act.
(footnote: 1)  Further, because the FAA and the Illinois Act have common origins, Illinois courts have looked to federal court decisions interpreting similar provisions of the FAA for guidance when interpreting provisions under the Illinois Act.  
J&K Cement Construction, Inc.
, 119 Ill. App. 3d 663, 668 (1983).  Therefore, as guided by the language in the FAA, we apply the principles of contract construction to analyze the arbitration agreement.   

The doctrine of unconscionability prevents overreaching at the contract-formation stage.  
Bishop
, 316 Ill. App. 3d at 1196.  Illinois courts recognize two types of unconscionability: procedural and substantive.  Procedural unconscionability "involves impropriety during the process of forming a contract that deprives a party of a meaningful choice."  
Bishop
, 316 Ill. App. 3d
 at 1196.  The relevant question to ask is, how did the provision make its way into the contract?  
Basselen v. General Motors Corp.
, 341 Ill. App. 3d 278, 288 (2003). 
 Substantive unconscionability "relates to situations where a clause or term in a contract is allegedly one-sided or overly harsh."  
Bishop
, 316 Ill. App. 3d
 at 1196.
  Before a contract or clause will not be enforced, 
it must be found to be both procedurally and substantively unconscionable.  
Basselen
, 341 Ill. App. 3d at 288.  
In other words, unless "the clause has made its way into a contract in some untoward manner and the clause works some substantial detriment to the opposing party, the clause is not unconscionable and will be enforced."  
Basselen
, 341 Ill. App. 3d at 288.
          

Plaintiff argues the arbitration clause is both procedurally and substantively unconscionable.  His argument, however, only addresses the substantive side of unconscionability.  Plaintiff argues the clause is unconscionable because it: prohibits participation in class action lawsuits; prohibits the recovery of attorney fees; and forces individuals to incur prohibitive arbitration costs.  

Class Actions

With respect to plaintiff's argument that the arbitration provision is unconscionable because it prohibits class actions, we find a recent Illinois case to be somewhat instructive.  In 
Hutcherson v. Sears Roebuck & Co.
, 342 Ill. App. 3d 109 (2003), this court was presented with the question of whether an arbitration clause in an amended credit card agreement was enforceable.  The plaintiffs contended 
the arbitration clause was unconscionable because, among other reasons, it prohibited them from pursuing their rights in a class action.  The amended credit card agreement provided that the agreement would be interpreted in accordance with federal law and to the extent that state law would apply, the laws of the State of Arizona would govern.  However, because there was no Arizona law on point, the court looked to other jurisdictions for guidance.  The court acknowledged that there was case law supporting both parties' arguments; however, it ultimately concluded that the no-class-action provision was not so one-sided or oppressive as to render the agreement unconscionable.  
Hutcherson
, 342 Ill. App. 3d at 121.  
Important to the court's decision was its recognition of the strong policy favoring enforcement of arbitration provisions as well as its conclusion the arbitration provision provided that the defendant would primarily bear the burden of the costs of arbitration unless an arbitrator deemed the plaintiffs' claims frivolous.  
Hutcherson
, 342 Ill. App. 3d at 121-122. 

Here, we are persuaded by this court's holding in 
Hutcherson
.  As in 
Hutcherson
, the fac
tors that were present in the cases in which arbitration agreements were found unconscionable are not present in this case.  If plaintiff did not wish to agree to the new terms in his credit card agreement, he simply should have stopped using the card.  We find the arbitration provision enforceable despite its prohibition on class actions.  We further note that the question of whether an individual is entitled to participate in a class action as a matter of right is a question of public policy, which we suggest should be addressed by the legislature.  

Further, in violation of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), plaintiff presents almost no argument as to why this court should find the arbitration provision unconscionable.  He cites to numerous cases but does not argue how these authorities support his contention.  Moreover, after examining these cases, we find they do not support plaintiff's contention.  We briefly mention the majority of these cases to illustrate our point.  In 
In re Knepp
, 229 B.R. 821 (Bankr. N.D. Ala. 1999), the United States Bankruptcy Court for the Northern District of Alabama did not enforce an arbitration provision because the evidence was insufficient to establish the parties agreed to arbitrate their disputes. 
 In 
Rollins Inc. v. Foster
, 991 F. Supp. 1426 (M.D. Ala. 1998), the United States District Court for the Middle District of Alabama found an arbitration clause in a termite extermination contract enforceable because the plaintiff had signed the contract and the contract provided the parties' disputes would be settled by arbitration.  In 
Patterson v. ITT Consumer Financial Corp.
, 14 Cal. App. 4th 1659, 18 Cal. Rptr. 2d 563 (1993), the California Court of Appeals found an arbitration clause that applied to consumers in California unconscionable because the clause provided that arbitration proceedings would take place in Minnesota and because consumers would have to spend a minimum of $850 in order to obtain an initial participatory hearing.  In 
Williams v. Aetna Finance Co.
, 83 Ohio St. 3d 464, 700 N.E.2d 859 (1998), the Supreme Court of Ohio found an arbitration provision unenforceable based on the provisions of the entire contract in which an agent of the defendant fraudulently induced elderly residents to apply for home improvement loans with excessively high fees and interest rates for work that was never intended to be completed.  In 
West Virginia ex rel. Dunlap v. Berger
, 211 W. Va. 549, 567 S.E.2d 265 (2002), the Supreme Court of Appeals of West Virginia found an arbitration clause unconscionable because consumers who financed their purchases at a jewelry store were automatically charged for property, life and disability insurance without being asked whether they wished to purchase the insurance.  In 
Leonard v. Terminix International Co.
, No. 1010555, __ S.E.2d __ (Ala. October 18, 2002), the Supreme Court of Alabama found an arbitration provision in a termite extermination contract unconscionable because consumers were neither given an opportunity to accept or reject the provision, nor were they given a "
quid pro quo
" for agreeing to arbitration and forgoing their constitutional right to a trial by jury.  In 
Ingle v. Circuit City Stores, Inc.
, 328 F.3d 1165 (9th Cir. 2003), the Ninth Circuit Court of Appeals found an arbitration provision in an employment application unconscionable because if the applicant did not agree to sign the provision, the applicant would not be considered for employment. 

We are not persuaded by plaintiff's reliance on these cases.  Additionally, we are not persuaded by the cases plaintiff cited to in his motion to cite additional authority.  In 
Alexander v. Anthony International, L.P.
, No. 02-3764, __ F.3d __ (3d Cir. August 19, 2003), and 
In re Jobe Concrete Products, Inc.
, No. 08-0200175-Cv, __ S.W.3d __ (Tex. App. El Paso July 31, 2003), the arbitration provisions in the plaintiffs' employment agreements were found to be unconscionable because the plaintiffs were required to accept the provisions as a condition of employment.  Further, the agreement in 
Alexander
 limited the plaintiff's recovery of attorney fees and required the losing party to pay arbitration expenses.  In 
Jaramillo v. JH Real Estate Partners, Inc.
, 111 Cal. App. 4th 394, 3 Cal. Rptr. 3d 525 (2003) the California Court of Appeals found an arbitration provision in a residential apartment lease agreement to be unconscionable because the provision was "buried" in small print within the lease agreement and the tenant had no opportunity to decline the provision.  In 
Boghos v. Lloyd's of London
, 109 Cal. App. 4th 1728, 1 Cal. Rptr. 3d 447 (2003), the California Court of Appeals found an arbitration provision in a long-term disability insurance policy unconscionable because it required the insured to split the costs of arbitration.

Attorney Fees

We next address plaintiff's contention that the arbitration provision is unconscionable because it waives the consumer's right to recover attorney fees.  Plaintiff points to the part of the provision that states "unless unlawful, we will pay our and you will pay your lawyers', experts' and witness fees in all situations."  Plaintiff argues the provision should be interpreted as meaning that unless the arbitration provision is found to be unlawful, consumers cannot recover attorney fees. 

Defendants argue that plaintiff's interpretation is illogical and the provision should instead be interpreted to mean that unless there is a statute to the contrary, each party agrees to pay its own attorney fees.  Defendants further maintain that if plaintiff were to prevail on his Consumer Fraud and Deceptive Business Practices Act (Act) claims, he can recover attorney fees because the Act permits recovery of reasonable attorney fees and costs by a successful claimant.  815 ILCS 505/10a(c) (West 1998).  Defendants rely on 
Johnson v. West Suburban Bank
, 225 F.3d 366 (3rd Cir. 2000) (finding that plaintiff would be entitled to recover attorney fees in arbitration proceeding in a claim involving the Truth in Lending Act because that act provides for the recovery of attorney fees), and 
Snowden v. Checkpoint Check Cashing
, 290 F.3d 631 (4th Cir. 2002) (finding a right to attorney fees in arbitration under the Truth in Lending Act because the arbitration agreement required the parties to bear their own attorney fees unless "inconsistent with the applicable law")
. 

We find the reasoning of 
Johnson
 and 
Snowden
 persuasive.  We agree with defendants' argument, as noted above, that because the 
Act has a fee-shifting statute that permits a party to recover attorney fees, plaintiff could recover attorney fees in an arbitration proceeding.  
Other than plaintiff's attempts to distinguish 
Johnson
 and 
Snowden
, plaintiff does not cite to any other case law to support his position. 
 We reject plaintiff's contention.  

Prohibitive Costs

Plaintiff next contends the arbitration provision is unconscionable because it "saddles plaintiff with paying the costs of arbitration."  Plaintiff argues that the costs of arbitration are prohibitively high when compared to his expected recovery.

The portion of the arbitration agreement regarding the costs of arbitration provides in relevant part: 

"If you make a request to us in writing, we will temporarily advance to you the filing, administrative, and hearing fees for the arbitration of your Claim against us * * * in excess of any filing fee you would have been required to pay to file the Claim in a state or federal court * * *.  At the end of the arbitration, the arbitrator will decide if you have to repay the advance (and if you do have to repay, you agree to do so)."  

Defendants maintain that plaintiff's argument is moot because defendants agreed in their appellate brief to advance plaintiff any arbitration costs and waive any right to seek reimbursement of the costs even if plaintiff does not prevail at arbitration.  Defendants further argue that even if they did not agree to pay plaintiff's arbitration costs and waive reimbursement, plaintiff's argument lacks merit because plaintiff's arbitration costs would not be "prohibitive."  

The party seeking to invalidate an arbitration agreement on the basis that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs.  
Green Tree Financial Corp.-Alabama v. Randolph
, 531 U.S. 79, 92, 148 L. Ed. 2d 373, 384, 121 S. Ct. 513, 522
 (2000).  Plaintiff has not met this burden.  We agree with defendants that plaintiff's arbitration costs would not be prohibitive.  The arbitration provision provides that defendants will advance plaintiff the costs of arbitration that are in excess of any court filing fee.  Plaintiff argues that his initial arbitration costs would be $125, which is prohibitive when compared with his expected recovery.  Defendants maintain that because it costs $221 to file a lawsuit in Cook County, an arbitration fee of $125 would be reasonable.  We agree with defendants.  Defendants further point out that Justice Ginsberg noted in a concurring opinion in 
Green Tree
 that a $125 fee to arbitrate a claim was reasonable.  See 
Green Tree
, 531 U.S. at 95, 148 L. Ed. 2d at 386, 121 S. Ct. at 524
 (Ginsburg, J., concurring in part and dissenting in part)
. 
 Plaintiff also argues that if he loses in an arbitration proceeding, he would have to pay "thousands of dollars" to repay the advance if ordered by the arbitrator.  However, because plaintiff offers no support for this claim, we reject it as purely speculative.  

Combined Effect

Because we do not find the arbitration provision unconscionable under any one of plaintiff's individual theories, we also do not find the provision unconscionable when considering the combined effect of these provisions.  

CONCLUSION

We conclude the circuit court erred in denying defendants' motion to stay the proceedings and compel arbitration.  We reverse the circuit court's order and remand this cause for further proceedings consistent with this opinion.  

Reversed and remanded. 

FOOTNOTES
1: 
We do recognize, however, that not all sections of the FAA and Illinois Act are the same.  See 
Comdisco, Inc. v. Dun & Bradstreet Corp.
, 285 Ill. App. 3d 796, 800-01 (1996).